[Cite as *State v. Lytle*, 2016-Ohio-1552.]

## IN THE COURT OF APPEALS OF OHIO

## TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State of Ohio, | : | |
| Plaintiff-Appellee, | : | No. 15AP-556 |
| | | (C.P.C. No. 13CR-127) |
| v. | : | |
| | | (REGULAR CALENDAR) |
| Daniel W. Lytle, | : | |
| Defendant-Appellant. | : | |

---

### D E C I S I O N

Rendered on April 14, 2016

---

**On brief:** *Ron O'Brien*, Prosecuting Attorney, and *Laura R. Swisher*, for appellee. **Argued:** *Laura R. Swisher*.

**On brief:** *Samuel H. Shamansky Co., L.P.A., Samuel H. Shamansky, Donald L. Regensburger*, and *Colin E. Peters*, for appellant. **Argued:** *Donald L. Regensburger*.

---

APPEAL from the Franklin County Court of Common Pleas

DORRIAN, P.J.

{¶ 1} Defendant-appellant, Daniel W. Lytle, appeals the May 14, 2015 judgment of the Franklin County Court of Common Pleas resentencing him following this court's decision in *State v. Lytle*, 10th Dist. No. 13AP-866, 2015-Ohio-1133. For the following reasons, we reverse the judgment of the trial court.

### I. Facts and Procedural Background

{¶ 2} Appellant challenges only his conviction for conspiracy to commit kidnapping. As we extensively reviewed the factual and procedural history of this case in our prior decision, we shall limit our discussion to only those facts relevant to the disposition of the present appeal. *See id.* at ¶ 2-8, 27-50, 83.

{¶ 3} Appellant's conviction for conspiracy to commit kidnapping was based largely on the testimony of Wayne VanBlarcume. At trial, VanBlarcume testified that, on

December 18, 2012, he received a call from a friend who asked if he was interested in making some money. VanBlarcume stated he was interested, and agreed to the distribution of his phone number. Approximately 15 minutes later, VanBlarcume received a call from a man who identified himself as "Stan." (Tr. Vol. IV, 472.) "Stan" asked if he could come over to talk to VanBlarcume, VanBlarcume agreed and provided his home address.

{¶ 4} Approximately 15 minutes later, "Stan" arrived at VanBlarcume's house, and VanBlarcume got into his car. VanBlarcume later identified the caller, "Stan," both in a police photo array and at trial, as appellant. Appellant told VanBlarcume that his wife was trying to frame him for breaking into her house and putting a knife to her throat. As a result, appellant stated "[h]e'd like to get somebody to mess his wife up and cut her face up with a box cutter * * * [s]o she could look in the mirror and think of him every time she looks in the mirror." (Tr. Vol. IV, 474.) Appellant asked VanBlarcume to find someone to complete this task for him. Appellant then drove VanBlarcume to his wife's house, pointed out which house she lived in, and then returned VanBlarcume to his home. VanBlarcume testified he had no intention of helping appellant and did not agree to help appellant. VanBlarcume told appellant "I'd see what I could do, and that was it." (Tr. Vol. IV, 478.)

{¶ 5} After appellant departed, VanBlarcume contacted law enforcement, but did not receive a response. On December 30, 2012, VanBlarcume received a call from appellant, who asked if VanBlarcume knew someone named Jimmy Lee. VanBlarcume said that he did know him, but that he was in prison. On January 2, 2013, after seeing a local news story describing appellant's arrest, VanBlarcume again contacted law enforcement and identified appellant in a photo array. VanBlarcume stated at trial that he was "100 percent sure" that appellant was the man who wanted him to find someone to cut his wife's face. (Tr. Vol. IV, 494.)

{¶ 6} At trial, plaintiff-appellee, State of Ohio, also introduced telephone records corroborating appellant's calls to VanBlarcume on December 18 and 30, 2012.

{¶ 7} On January 9, 2013, a Franklin County Grand Jury indicted appellant, charging him with eight criminal counts: one count of conspiracy to commit aggravated murder, in violation of R.C. 2923.01 and 2903.01, a felony of the first degree; one count of aggravated burglary, in violation of R.C. 2911.11, a felony of the first degree; one count of aggravated robbery, in violation of R.C. 2911.01, a felony of the first degree; one count of

kidnapping, in violation of R.C. 2905.01, a felony of the first degree; one count of violating a protection order, in violation of R.C. 2919.27, a felony of the third degree; one count of abduction, in violation of R.C. 2905.02, a felony of the third degree; one count of domestic violence, in violation of R.C. 2919.25, a misdemeanor of the first degree; and one count of conspiracy to commit kidnapping, in violation of R.C. 2923.01 and 2905.01, a felony of the second degree. On July 8, 2013, the trial court filed an entry granting the state's motion to amend the indictment. The entry reflected the amendment of the count of conspiracy to commit aggravated murder to a single count of conspiracy to commit murder, in violation of R.C. 2923.01 and 2903.02, a felony of the first degree. Additionally, the trial court dismissed the counts of kidnapping and domestic violence at the state's request.

{¶ 8} Beginning July 8, 2013, the case was tried before a jury. On July 16, 2013, the jury returned a verdict finding appellant guilty of the remaining charges except for aggravated robbery. On September 12, 2013, the trial court held a sentencing hearing and imposed consecutive sentences for the offenses of conspiracy to commit murder, aggravated burglary, and conspiracy to commit kidnapping, which were to run concurrently with the sentence for abduction for a total of 27 years imprisonment. On the same day, the trial court filed a judgment entry reflecting appellant's conviction and sentence.

{¶ 9} On appeal, this court found that appellant's right to a speedy trial was not violated and affirmed appellant's convictions for aggravated burglary, abduction, violation of a protection order, and conspiracy to commit murder. *Lytle* at ¶ 89. However, we found that the trial court, in the September 12, 2013 sentencing entry, erroneously identified the conspiracy to commit kidnapping verdict as kidnapping proper, which required us to vacate the conviction and remand to the trial court for the limited purpose of issuing a corrected judgment entry before undertaking a review of the conviction. *Id.* at ¶ 7-10.

{¶ 10} On May 4, 2015, the trial court held a resentencing hearing, imposing a sentence identical to the one imposed on September 12, 2013. On May 14, 2015, the trial court filed a judgment entry reflecting appellant's resentencing and properly identifying appellant's conviction for conspiracy to commit kidnapping.

## II.  Assignments of Error

{¶ 11} Appellant appeals and assigns the following two assignments of error for our review:

> [I.] Appellant was convicted of conspiracy to commit kidnapping in the absence of evidence sufficient to support a finding of guilty in violation of his right to due process as guaranteed by the Fifth and Fourteenth [A]mendments to the United States Constitution and comparable provisions of the Ohio Constitution.
>
> [II.] Appellant's conviction for conspiracy to commit kidnapping was against the manifest weight of the evidence in violation of his right to due process as guaranteed by the Ohio Constitution.

## III.  Discussion

### A.  First Assignment of Error - Sufficiency of the Evidence

{¶ 12} In his first assignment of error, appellant asserts the state failed to demonstrate that (1) appellant reached an agreement with another party to facilitate the offense of kidnapping, (2) there was a substantial overt act undertaken in furtherance of the conspiracy, and (3) the conduct proposed by appellant constituted kidnapping.  We agree with appellant that the state failed to demonstrate that the conduct proposed by appellant constituted kidnapping.

{¶ 13} In *Lytle*, we stated the standard of review for challenges to the sufficiency of the evidence as follows:

> The legal concepts of sufficiency of the evidence and weight of the evidence involve different determinations. *State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997). As to sufficiency of the evidence, " 'sufficiency' is a term of art meaning that legal standard which is applied to determine whether the case may go to the jury or whether the evidence is legally sufficient to support the jury verdict as a matter of law." *Id.*, citing *Black's Law Dictionary* 1433 (6 Ed.1990). A determination as to whether the evidence is legally sufficient to sustain a verdict is a question of law. *Thompkins* at 386. When we review the sufficiency of the evidence upon appeal, we construe the evidence in the light most favorable to the prosecution to determine whether a rational trier of fact could have found the essential elements of the offense proven beyond a reasonable doubt. *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus. As a result, when we review the sufficiency of the evidence, we do not on appeal reweigh the credibility of

> the witnesses. *State v. Yarbrough*, 95 Ohio St.3d 227, 2002-Ohio-2126, ¶ 79.
>
> The relevant inquiry on review of the sufficiency of the evidence is whether, "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." (Emphasis sic.) *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). A reversal based on insufficient evidence has the same effect as a not guilty verdict because such a determination "means that no rational factfinder could have voted to convict the defendant." *Tibbs v. Florida*, 457 U.S. 31, 41 (1982).

*Id.* at ¶ 22-23.

{¶ 14} Ohio's conspiracy statute, R.C. 2923.01(A), provides that "[n]o person, with purpose to commit or to promote or facilitate the commission of * * * kidnapping * * * shall do either of the following: (1) With another person or persons, plan or aid in planning the commission of any of the specified offenses; (2) Agree with another person or persons that one or more of them will engage in conduct that facilitates the commission of any of the specified offenses."  Furthermore, R.C. 2923.01(B) provides that "[n]o person shall be convicted of conspiracy unless a substantial overt act in furtherance of the conspiracy is alleged and proved to have been done by the accused or a person with whom the accused conspired, subsequent to the accused's entrance into the conspiracy.  For purposes of this section, an overt act is substantial when it is of a character that manifests a purpose on the part of the actor that the object of the conspiracy should be completed." *See State v. Peterson*, 10th Dist. No. 07AP-303, 2008-Ohio-2838, ¶ 69; *State v. Papp*, 68 Ohio App.2d 21, 23 (10th Dist.1980) ("[A]n overt act is an open act, done outwardly, without attempt at concealment, and performed pursuant to and manifesting a specific intent or design."); *Lytle* at ¶ 85.

{¶ 15} "A person is guilty of conspiracy under R.C. 2923.01, when with purpose to commit, promote, or facilitate the commission of one of the offenses listed in R.C. 2923.01(A), he plans the commission of the crime with another and does a substantial overt act in furtherance of the conspiracy, even though the other person feigns agreement and at no time intends to go through with the plan." *State v. Marian*, 62 Ohio St.2d 250 (1980), syllabus. *See Lytle* at ¶ 85, citing *State v. Fitzgerald*, 9th Dist. No. 23072, 2007-Ohio-701, ¶ 25; *State v. Fink*, 12th Dist. No. CA92-01-001 (Dec. 21, 1992).  "While the

offense of conspiracy requires an agreement to accomplish an unlawful object and an overt act in furtherance thereof, remuneration is not required." *Lytle* at ¶ 85, citing *State v. Lindsey*, 87 Ohio St.3d 479, 481 (2000).

{¶ 16} Having reviewed the evidence in a light most favorable to the state, while there may have been sufficient evidence to support that (1) appellant reached an agreement with VanBlarcume to cut up his wife's face, and (2) appellant engaged in an overt act, we cannot say there was sufficient evidence to support a finding that the conduct proposed by appellant constituted kidnapping.

{¶ 17} Kidnapping is defined in R.C. 2905.01(A), which provides, in pertinent part:

> No person, by force, threat, or deception, * * * by any means, shall remove another from the place where the other person is found or restrain the liberty of the other person, for any of the following purposes:
>
> * * *
>
> (2) To facilitate the commission of any felony or flight thereafter;
>
> (3) To terrorize, or to inflict serious physical harm on the victim or another[.]

{¶ 18} The focus of our analysis here is on the elements of "restrain the liberty of the other person." The state argues very briefly that being cut on the face with a box cutter and being beaten to a pulp can not be effectuated without restraining the victim in some way. "The nature of the weapon and the requested injuries necessitates that the victim would be restrained to inflict the very specific damage requested." (Appellee's Brief, 7.) The state further argues that "[t]he use of a box cutter and the request for cutting her face requires an up-close and very personal attack involving prolonged close contact, not mere incidental restraint." (Appellee's Brief, 10.)

{¶ 19} The concepts of "incidental restraint" and "prolonged" restraint are derived from case law involving the analysis of kidnapping crimes already committed. Indeed, appellant cited to two such cases in his brief, *State v. Elmore*, 111 Ohio St.3d 515, 2006-Ohio-6207, and *State v. Logan*, 60 Ohio St.2d 126 (1979). We agree with the state that these cases are distinguishable from the instant case, as here we review an alleged inchoate crime not yet completed. We also agree with the state that the concepts derived from such can be helpful to our analysis of the alleged inchoate crime, where no other

authority exists to instruct us otherwise. The state has cited to no other authority, nor has independent research uncovered directly comparable authority.

{¶ 20} Examining the evidence in a light most favorable to the state, we find no express or implied references to restraint, incidental, prolonged, or otherwise. Under direct examination, VanBlarcume stated the following:

> [Assistant Prosecutor:] Did [appellant] say anything else to you?
>
> [VanBlarcume:] Well, let's see. He said he'd like to get somebody to mess his wife up and cut her face up with a box cutter.
>
> Q: Did he say why he wanted to have her face cut up with a box cutter?
>
> A: Yeah. So she could look in the mirror and think of him every time she looks in the mirror.
>
> Q: And you said he was looking for someone to mess her up. Are those the words that he used?
>
> A: No. I wasn't gonna do it. And once he told me he wanted somebody to do it, I called the police after he left.
>
> Q. Okay. Did he want you to do this?
>
> A. No. He did not ask me to do it.
>
> Q. Okay. What was he asking of you?
>
> A. Just try to find somebody to do it.
>
> Q: Okay. Did you think he was serious?
>
> A: He was serious as a heart attack.
>
> Q: And what did he specifically want this person to do?
>
> A: Beat his wife to a pulp and cut her face up with a box cutter.

(Tr. Vol. IV, 474.)

{¶ 21} Therefore, on the facts of this case, we are compelled to find that appellant's conviction for conspiracy to commit kidnapping is not supported by sufficient evidence because the state failed to establish an essential element of the charged offense.

{¶ 22} Accordingly, we sustain appellant's first assignment of error.

**B. Second Assignment of Error - Manifest Weight**

{¶ 23} In his second assignment of error, appellant asserts that his conviction for conspiracy to commit kidnapping is against the manifest weight of the evidence. Having found appellant's conviction is not supported by sufficient evidence, appellant's second assignment of error is rendered moot.

## IV. Conclusion

{¶ 24} Having sustained appellant's first assignment of error and rendered moot appellant's second assignment of error, we reverse the judgment of the Franklin County Court of Common Pleas and remand to that court for further proceedings consistent with law and this decision.

*Judgment reversed and*
*cause remanded.*

LUPER SCHUSTER and HORTON, JJ., concur.